**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-7009**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RYAN SCOTT KIBBLE,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. David A. Faber, Senior District Judge. (2:19-cr-00077-1)

Argued: January 29, 2021                                Decided: April 1, 2021

Before GREGORY, Chief Judge, KEENAN, and QUATTLEBAUM, Circuit Judges.

Affirmed by published per curiam opinion. Chief Judge Gregory and Judge Quattlebaum wrote concurring opinions.

**ARGUED:** Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Jennifer Rada Herrald, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Wesley P. Page, Federal Public Defender, David R. Bungard, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Michael B. Stuart, United States Attorney, Jennifer Rada Herrald, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

PER CURIAM:

Ryan Kibble began serving a 57-month term of imprisonment at FCI Elkton shortly after he pled guilty to one count of traveling to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b), (e). After the coronavirus began infecting staff and incarcerated persons at FCI Elkton, Mr. Kibble sought compassionate release. He argued that his chronic health conditions placed him at a heightened risk for contracting and suffering severe complications from the disease. The district court denied the motion for compassionate release. For the reasons discussed below, we affirm.

## I.

On March 1, 2019, Mr. Kibble logged onto an app called "Meet Me" and began talking with several "presumably single adult women." J.A. 66. He "matched" with and started talking to someone who identified herself as an 18-year-old female. But upon learning that she was only 14, Mr. Kibble kept talking to her. He engaged her in sexual conversations: first via text message, then over the phone. Ultimately, the two arranged to meet in person and have sex.

As planned, Mr. Kibble left his Belpre, Ohio office the next day and drove to a parking lot in Parkersburg, West Virginia. There Mr. Kibble was greeted, not by a 14-year-old girl, but by law enforcement who immediately arrested him. The teenage girl that Mr. Kibble thought he was talking to was actually an undercover federal agent.

A grand jury indicted Mr. Kibble. Initially, the district court remanded him to the custody of the Bureau of Prisons. But a month later, it released him on his own

2

recognizance. While out on bond, Mr. Kibble negotiated a plea agreement with the Government, in which he agreed to plead guilty to one count of traveling to engage in illicit sexual conduct and the Government agreed to dismiss the remaining count in the indictment. The parties also agreed that a sentence of 46–78 months, coupled with a 15-year term of supervised release, was appropriate. The district court conditionally accepted the negotiated plea.

Mr. Kibble remained out on bond for ten months in between his change-of-plea hearing on March 18, 2019 and his sentencing hearing on January 14, 2020. At sentencing, the district court calculated Mr. Kibble's guidelines range as 46-57 months' imprisonment. J.A. 133. The court rejected Mr. Kibble's request for a low-end sentence and imposed a 57-month term of imprisonment instead. In selecting this sentence, the court explained:

> [A] sentence at the top of the guidelines was called for because of the egregious nature of the defendant's misconduct. Not only did the defendant express a willingness and a desire to engage in an illicit sexual relationship with a minor, he engaged in a conversation that even without consummating a sexual act would certainly contribute to, for want of a better word, the delinquency of the minor.
>
> I find the defendant's behavior despicable and inexcusable. And I think this cries out for a sentence at the top of the guidelines, particularly to impose the maximum deterrent impact on others who might be tempted to engage in similar conduct.
>
> The Court believes that sentence is sufficient but not greater than necessary to adequately punish the defendant for his serious offense behavior, to instill within the defendant and the public a proper respect for the law, and to provide for a proper period of incapacitation and a suitable opportunity for rehabilitation. J.A. 152.

The court also imposed a 15-year term of supervised release and ordered Mr. Kibble to pay a $5,000 special assessment. After imposing this sentence, the district court, without

3

objection from the Government, continued Mr. Kibble's bond and allowed him to self-report. J.A. 154. Mr. Kibble began his prison sentence on February 14, 2020.

To Mr. Kibble's misfortune, he entered FCI Elkton only shortly before COVID-19 did. Mr. Kibble was born with tricuspid atresia, a heart condition that has required two open heart surgeries, a cardiac catheterization procedure, and a surgery to redirect blood from his lower body to his lungs. Mr. Kibble also has non-alcohol related cirrhosis of the liver. Concerned that these underlying conditions would make him more susceptible to contracting COVID-19 and suffering serious complications, Mr. Kibble filed an emergency motion for compassionate release. He contracted the virus shortly thereafter.

The district court acknowledged that Mr. Kibble's medical conditions, when viewed in conjunction with the dire infection rate at FCI Elkton, presented "extraordinary and compelling reasons" for granting a reduced sentence under 18 U.S.C. § 3582(c)(1)(A). It nonetheless denied Mr. Kibble's motion, finding that he posed a danger to the safety of others and that the 18 U.S.C. § 3553(a) factors counseled against early release. Mr. Kibble timely appealed.

II.

To date, we have not decided in a published opinion what standard governs our review of a grant or denial of compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Several of our sister circuits review for an abuse of discretion, finding that "the standard applicable to other motions for sentence reductions under § 3582(c)(2) [] instructive." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also United States v.*

4

*Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020) *United States v. Rodd*, 966 F.3d 740, 747–48 (8th Cir. 2020); *United States v. Pawlowski*, 967 F.3d 327, 330–31 (3d Cir. 2020). We now follow suit.

Section 3582(c)(2)'s language mirrors § 3582(c)(1)'s in relevant respects. Like § 3582(c)(1), it provides that a "court *may* reduce [a] term of imprisonment," upon considering the § 3553(a) factors, if certain conditions are met. 18 U.S.C. § 3582(c)(2) (emphasis added). Like our prior unpublished decisions on this issue, we see no reason to adopt different standards for these parallel provisions.[1] We therefore review the district court's denial of Mr. Kibble's motion for abuse of discretion.

III.

Before 2018, district courts could only reduce a term of imprisonment under § 3582(c)(1)(A) "upon motion of the Director of the Bureau of Prisons." 18 U.S.C. § 3582(c)(1)(A) (2002). BOP used its power to identify candidates for compassionate release with noted infrequency. *United States v. Brooker*, 976 F.3d 228, 231–21 (2d Cir. 2020) (citing U.S. Dep't of Just. Office of the Inspector General, The Federal Bureau of

---

[1] *See, e.g., United States v. Blevins*, 832 F. App'x 192 (Mem.) (4th Cir. 2020) (unpublished) (per curiam); *United States v. Boyd*, 831 F. App'x 648 (Mem.) (4th Cir. 2020) (unpublished) (per curiam); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (unpublished) (per curiam); *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (unpublished) (per curiam); *United States v. Sloan*, 823 F. App'x 173, 174 (4th Cir. 2020) (unpublished) (per curiam); *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (unpublished) (per curiam); *United States v. Aquino*, 813 F. App'x 127, 128 (4th Cir. 2020) (unpublished) (per curiam); *United States v. Bunch*, 812 F. App'x 157, 157 (4th Cir. 2020) (unpublished) (per curiam); *United States v. Hill*, 809 F. App'x 161, 162 (4th Cir. 2020) (unpublished) (per curiam).

Prisons' Compassionate Release Program 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf) (last visited March 25, 2021) (saved as ECF opinion attachment). For years, BOP resisted congressional efforts to expand eligibility for compassionate release. *Id.*; *United States v. Jones*, 980 F.3d 1098, 1110 (6th Cir. 2020). So, when Congress passed the First Step Act in 2018, it amended 18 U.S.C. § 3582(c). *See* First Step Act, Pub. L. 115-391 § 603(b), 132 Stat. 5194, 5239 (2018) (titled "Increasing the Use and Transparency of the First Step Act"). As amended, § 3582(c) permits incarcerated persons to file motions for compassionate release directly with the district court so long as they first exhaust their administrative remedies. *Id.*[2]

Relevant here, § 3582(c)(1)(A) permitted the district court to reduce Mr. Kibble's term of imprisonment if it first found that "extraordinary and compelling reasons warrant[ed] such a reduction," then considered the § 3553(a) factors, and ultimately determined that the requested reduction was consistent with the "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1); *Chambliss*, 948 F.3d at 693–94. The district court enjoyed broad discretion in conducting this analysis. *Jones*, 980 F.3d at 1112; *Brooker*, 976 F.3d at 237–38; *Chambliss*, 948 F.3d at 693.

---

[2] To satisfy § 3582(c)(1)(A)'s exhaustion requirement, incarcerated persons must first ask the BOP to file a motion for compassionate release on their behalf, and then, either (1) appeal the BOP's failure to bring a motion on their behalf, or (2) allow 30 days to lapse after making the request, whichever comes first. 18 U.S.C. § 3582(c)(1)(A). Courts are split over the question of whether, and under what circumstances, a court may waive § 3582(c)(1)(A)'s exhaustion requirement. That issue does not arise here, however, as it is undisputed that Mr. Kibble exhausted his administrative remedies. Opening Br. at 5–6; Response Br. at 10; J.A. 362–63.

The district court concluded that Mr. Kibble's health conditions, within the context of a high-spread facility like FCI Elkton, amounted to extraordinary and compelling circumstances, a finding that the Government does not challenge on appeal. The district court nonetheless denied Mr. Kibble's motion, holding that a sentence reduction would not be consistent with USSG § 1B1.13, p.s. and that the § 3553(a) factors counseled against a sentence reduction. Although the district court erred in applying USSG § 1B1.13, p.s. to Mr. Kibble's motion, it did not abuse its discretion in applying the § 3553(a) factors to Mr. Kibble's case.

A.

Section 3583(c)(1) requires that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission." Here, the district court held that USSG § 1B1.13 was "applicable" to Mr. Kibble's request. USSG § 1B1.13 renders an incarcerated person ineligible for a sentence reduction if the district court determines that he is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The district court found that Mr. Kibble posed a danger to the public and concluded that he did not qualify for § 3582(c)(1)(A) relief.

But we have since held that USSG § 1B1.13 only applies when a request for compassionate release is made "[u]pon motion of the Director of the Bureau of Prisons." *United States v. McCoy*, 981 F.3d 271, 281–83 (4th Cir. 2020). The Sentencing Commission adopted USSG § 1B1.13 before Congress enacted the First Step Act—at a time when "a motion [for compassionate release] could reach a reviewing court only by way of the BOP." *Id.* at 283. And, as we explained in *McCoy*, the text of the policy

7

statement indicates that it only applies to motions of that sort. *Id.* at 281–82. The Commission "has not updated [USSG § 1B1.13] to account for the fact that the Act now allows defendants to file their own motions for compassionate release." *Id.* at 282. "[I]n other words, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* at 281.

Mr. Kibble filed his motion for compassionate release directly with the district court; the Director of the BOP did not submit it on his behalf. Accordingly, USSG § 1B1.13 did not apply to Mr. Kibble's request. The district court erred in holding otherwise. We therefore affirm on separate grounds.

## B.

Moreover, a district court may not grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) without "considering the factors set forth in section 3553(a) to the extent that they are applicable."[3] Mr. Kibble contends that, rather than viewing these factors holistically, the district court made one consideration dispositive: the amount of time he had served on his sentence. Mr. Kibble also argues that the district court gave insufficient weight to his preexisting medical conditions and the conditions at FCI Elkton. We do not read the district court's order as Mr. Kibble does.

---

[3] The text of 18 U.S.C. § 3582(c)(1) does not specify what conclusion a district court must draw from the § 3553(a) factors in order to grant a motion for compassionate release. In stark contrast to the portion of the statute that requires a sentence reduction to be "consistent with applicable policy statements," § 3582(c)(1) merely requires district courts to "consider[]" the relevant § 3553(a) factors. We understand this language as providing district courts with procedural guardrails for exercising their discretion, not creating a substantive prerequisite to compassionate release.

8

The district court considered the relevant § 3553(a) factors. It acknowledged that although Mr. Kibble lacked any criminal history, "his offense was violent," and the seriousness of traveling across state lines to have sex with a 14-year-old girl counseled against a sentence reduction. *Kibble*, 2020 WL 3470508, at *4. Notably, just a few months earlier the district court had imposed a sentence at the top of the guidelines range, emphasizing the "egregious," "despicable," and "inexcusable" nature of Mr. Kibble's offense conduct. J.A. 152. In evaluating the § 3553(a) factors at the original sentencing, the court also had concluded that a significant sentence was necessary to deter others from similar misconduct. *Id.*

It is true that, in denying Mr. Kibble's compassionate release motion, the district court found it "very significant" that Mr. Kibble had served such a small portion of his sentence. *Kibble*, 2020 WL 3470508, at *3. But, upon viewing this statement in context, we do not read "very significant" to mean "dispositive." The district court was entitled to consider the amount of time Mr. Kibble already had served as one factor in the § 3553(a) analysis. *See Chambliss*, 948 F.3d at 694; *Pawlowski*, 967 F.3d at 331. The district court also gave great weight to the nature of Mr. Kibble's offense, noting the "particular circumstances" of his conviction. Elsewhere in the opinion, the district court expressed concern that Mr. Kibble, "armed with condoms, crossed state lines for the express purpose of having sex with a fourteen-year-old girl." *Id.*

The record also demonstrates that the district court reconsidered the § 3553(a) factors in view of the extraordinary and compelling circumstances present in Mr. Kibble's case. The court's decision reflects its understanding of Mr. Kibble's health conditions, the

9

conditions at FCI Elkton, and the severe risks arising out of those circumstances. *Kibble*, 2020 WL 3470508, at *2 ("Accordingly, [the] defendant–due to his preexisting medical conditions–is at a higher risk of health problems resulting from COVID-19."); *id.* (explaining that FCI Elkton was "suffering from a significant outbreak of COVID-19" and that it "has been one of the hardest hit institutions in the country").

The district court did not abuse its discretion by nonetheless denying Mr. Kibble's motion. To do so, a district court must "act[] arbitrarily or irrationally, fail[] to consider judicially recognized factors constraining its exercise of discretion, rel[y] on erroneous factual or legal premises, or commit[] an error of law." *United States v. Trotman*, 829 F. App'x at 608 (quoting *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (internal quotation marks omitted)).  And here, the district court did not.

IV.

The district court did not abuse its discretion by concluding that the § 3553(a) factors counseled against a sentence reduction in Mr. Kibble's case.  Notwithstanding the district court's error in applying USSG § 1B1.13, we affirm.

*AFFIRMED*

10

GREGORY, Chief Judge, concurring:

The district court had discretion in evaluating Mr. Kibble's request for compassionate release. And as our decision explains, the district court's decision to deny that request fell within the realm of its permissible discretion. I write separately to express my additional views on the district court's analysis and, more broadly, the range of permissible considerations for motions for compassionate release.

I.

The district court correctly held that "extraordinary and compelling" circumstances may exist when at-risk inmates are housed in a correctional facility where COVID-19 is present. *United States v. Kibble*, No. 2:19-cv-00077, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020). "At risk" and "present" are necessarily vague terms of art. Imagining an inmate's health conditions on the X-axis, and the degree of spread (within the facility and surrounding community) on the Y-axis, courts must decide what combination of circumstances qualify as "extraordinary and compelling" with flexibility and common sense. Circumstances might not be "extraordinary and compelling" for an otherwise healthy 65-year-old gentleman at a facility with little spread; whereas, the same characteristics at a different facility might satisfy § 3582(c)(1)'s threshold. This analysis, as the district court noted, "requires a fact-intensive inquiry." *Id.* (quoting *United States v. Shakur*, No. 82 CR 312 (CSH), 2020 WL 1911224, at *1 (S.D.N.Y. Apr. 20, 2020)).

The analysis also requires appropriate consideration of the risks identified by public health experts. For example, the Center for Disease Control and Prevention advises that

11

"[o]lder adults are at greater risk of requiring hospitalization or dying if they are diagnosed with COVID-19." Older Adults, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited March 25, 2021) (saved as ECF opinion attachment). [1] Although the risk is highest for people above the age of 65, disparity exists across the board. *Id.* People in their thirties are twice as likely to be hospitalized for COVID-19 as people in their twenties, and four times as likely to die from the disease. *Id.*

The prevailing guidance also cautions that the risks associated with COVID-19 vary depending on people's underlying health conditions. "[A]dults of any age . . . are at increased risk of severe illness from the virus that causes COVID-19" if they suffer from one or more of several health conditions, such as cancer, coronary artery disease, or chronic kidney disease. People with Certain Medical Conditions, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 25, 2021) (saved as ECF opinion attachment). And other medical conditions, such as asthma, HIV, hypertension, and obesity *may* place adults of any age at increased risk.[2] *Id.*

---

[1] In the proceedings below, both parties relied upon the expert, albeit evolving, guidance provided by the Center for Disease Control and Prevention. J.A. 170-71, 176-79, 231, 233. The district court followed suit. J.A. 365. Absent argument to the contrary, I too view the current CDC guidance as the relevant benchmark for evaluating the threats that COVID-19 presents.

[2] The CDC acknowledges that it is learning more about COVID-19 every day. People with Certain Medical Conditions, CENTER FOR DISEASE CONTROL AND PREVENTION. It only recently discovered data linking Down syndrome with increased risk of severe illness from the virus that causes COVID-19. *Id.* The Center also added sickle (Continued)

12

But as public health experts recognize, we cannot view personal factors in isolation from social and demographic determinants of health. "Long-standing systemic health and social inequities [place] many people from racial and ethnic minority groups at increased risk of getting sick and dying from COVID-19." Health Equity Considerations & Racial & Ethnic Minority Groups, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited March 25, 2021) (saved as ECF opinion attachment). Systemic inequities likewise place individuals from rural communities at increased risk of severe illness. Rural Communities, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/other-at-risk-populations/rural-communities.html (last visited March 25, 2021) (saved as ECF opinion attachment). When raised and relevant, these considerations—among others—should all inform courts' evaluations of incarcerated persons' circumstances.

Here, Mr. Kibble identified three circumstances that, collectively, qualified as extraordinary and compelling: (1) the uncontrolled spread of COVID-19 at FCI Elkton, (2) his tricuspid atresia, and (3) his non-alcohol related cirrhosis of the liver. The district court agreed and so found. At the time of Mr. Kibble's motion, nearly 25% of Elkton's population had contracted COVID-19; nine inmates had died as a result. The ACLU of Ohio and the Ohio Justice & Policy Center had named FCI Elkton as a defendant in a class

cell disease and chronic kidney disease to its list of conditions that might increase the risk of severe illness among children. *Id.* As courts, we must adapt as readily as the guidance does.

13

action suit challenging the facility's conditions of confinement during the pandemic. And, at the time of Mr. Kibble's motion, Elkton was subject to a preliminary injunction aimed at correcting the facility's mismanagement. *See Wilson v. Williams*, 455 F. Supp. 3d 467, (N.D. Ohio 2020), *vacated by Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). This combination of factors rightly gave rise to the extraordinary and compelling circumstances animating this case.

## II.

Upon concluding that the circumstances that Mr. Kibble faced were extraordinary and compelling, the district court considered the factors set forth in 18 U.S.C. § 3553(a). The court correctly recognized that, under § 3582(c)(1), its task was not to assess the correctness of the original sentence it imposed. Rather, its task was to determine whether the § 3553(a) factors counseled against a sentence reduction in light of the new, extraordinary circumstances identified.

I begin by emphasizing what the text and logic of § 3582(c)(1) make plain: a sentence reduction is not inconsistent with the § 3553(a) factors solely because an incarcerated person has only served a small portion of his sentence. Section 3582(c)(1) permits a district court to reduce a sentence in "any case"—not just cases where a sentence has been substantially served; not just in cases involving low-level or non-violent offenses. *See United States v. Gonzales*, 520 U.S. 1, 5 ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting Webster's Third New International Dictionary 97 (1976)). When a statute provides for

14

relief in "any case," there is no basis for categorically limiting that relief to a certain subset of cases. *See id.* (holding that there was "no basis in the text" for understanding "any other term of imprisonment" to only refer to federal sentences); *see also Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 220 (2008) (finding that Congress' use of the word "any" was most naturally understood as meaning "of whatever kind"); *Citizens' Bank of La. v. Parker*, 192 U.S. 73, 81 (1904) ("The word any excludes selection or distinction."). The Supreme Court reminds us that courts must give effect to each word in a statute, *Setser v. United States*, 566 U.S. 231, 239 (2012), appreciating that "Congress says in a statute what it means and means in a statute what it says there." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). I recognize the breadth of 18 U.S.C. § 3582(c)(1)'s text not to discount the seriousness of some criminal offenses, but to give effect to the policy choice that Congress made plain: when extraordinary and compelling circumstances exist, even the most serious offenders may be eligible for mercy.

Mr. Kibble contends that the district court disregarded this principle and made the length of his time in prison dispositive. If, upon reading the district court's decision as a whole, I understood "very significant" to be a euphemism for "dispositive," then I would be compelled to find legal error. [3] The text of § 3553(a) does not make any factor, or

---

[3] As the per curiam opinion notes, the district court gave great weight to the nature of Mr. Kibble's offense, noting the "particular circumstances" of his conviction. To be sure, the district court's invocation of the "particular circumstances" of Mr. Kibble's conviction leaves some to the imagination about which § 3553(a) factors animated its ruling. *See United States v. Martin*, 916 F.3d 389, 395–96 (4th Cir. 2019) (identifying circumstances in which a district court must provide a reasoned explanation for declining to reduce a sentence under § 3582(c)(2)). The district court did not address the fact that, (Continued)

combination of factors, dispositive. Indeed, as Mr. Kibble argues, some courts have already granted motions for compassionate release in cases like his, where a person convicted of a sex offense had only served a small portion of his sentence.[4] Our decision does not cast doubt on those decisions. But nor can we hold that the district court abused its discretion by exercising that discretion differently. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

Finally, I disagree with the Government's suggestion that a district court may fulfill its duty to reconsider the § 3553(a) factors by merely recounting the considerations that supported the original sentence. Response Br. at 11. Section 3582(c)(1) necessarily envisions that the § 3553(a) factors may balance differently upon a motion for compassionate release than they did at the initial sentencing. An individual requesting compassionate release will, in all cases, be serving a sentence that a district court once held was "sufficient but not greater than necessary." If a district court's original § 3553(a) analysis could always prove that a sentence reduction would intolerably undermine the § 3553(a) factors, then 18 U.S.C. § 3582(c)(1) would, in effect, be a nullity.

---

on three prior occasions, it had found Mr. Kibble was not a danger to the public. J.A. 46, 154. Nor did it discuss the role of Mr. Kibble's commendable post-conviction conduct. On appeal, however, Mr. Kibble insists that he does not challenge the adequacy of the district court's explanation. Reply Br. at 1–2. The per curiam opinion therefore did not address that issue.

[4] *See* Opening Br. at 15–16 (citing *United States v. Locke*, No. CR18-0132 RAJ, 2020 WL 3101016, at *1, 6 (W.D. Wash. June 11, 2020); *United States v. Brown*, 2:18-cr-360 KOB-JEO (001) (N.D. Ala. May 22, 2020); *United States v. Ben-Yhwh*, 453 F. Supp. 3d 1324, 1326–27 (D. Haw. 2020); *United States v. Delgado*, 457 F. Supp. 3d 85, 86–87 (D. Conn. 2020); *United States v. Winston*, 1:13-cr-639-RDB (D. Md. 2020)).

There is good reason to believe that, in some cases, a sentence that was "sufficient but not greater than necessary" before the coronavirus pandemic may no longer meet that criteria. A day in prison under the current conditions is a qualitatively different type of punishment than one day in prison used to be. In these times, drastically different. Some facilities house inmates who now serve their sentences knowing that they are not equipped to guard against a virus that may result in serious illness or death. Other facilities keep COVID-19 at bay by placing inmates in solitary confinement, ending prison programs, restricting visitation, and limiting access to nonessential medical care. *See*, *e.g.*, *United States v. Colon*, No. 09-cr-294, 2021 WL 389144, at *6 (D. Conn. Feb. 4, 2021); *United States v. Nuzzolilo*, --- F. Supp. 3d ---, 2021 WL 372454, at *1 (D. Mass. Feb. 3, 2021); *United States v. Colburn*, --- F. Supp. 3d ---, 2021 WL 257133, at *1 (D. Mass. Jan. 26, 2021); *United States v. Jones*, No. 4:20-CR-00209, 2021 WL 120843, at *2 (M.D. Pa. Jan. 13, 2021); *United States v. Harrison*, No. 12-cr-0088-01 (ESH), 2020 WL 5702106, at *2 (D.D.C. Sept. 24, 2020); *Turner v. United States*, No. 2:18-cr-128, 2020 WL 4370124, at *2 (E.D. Va. July 30, 2020); *United States v. Riley*, No. ELH-16-0402, 2020 WL 3034843, at *6–8 (D. Md. June 4, 2020); *United States v. Regas*, No. 3:91-cr-00057-MMD-NA-1, 2020 WL 2926457, at *1 (D. Nev. June 3, 2020); *United States v. Cardenas-Garcia*, No. 20-CR-00644-GPC, 2020 WL 2797529, at *2 (S.D. Cal. May 29, 2020); *see also BOP Modified Operations*, BOP.GOV, available at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited March 25, 2021) (saved as ECF opinion attachment). These conditions, not contemplated by the original sentencing court, undoubtedly increase a prison sentence's punitive effect.

That said, the record here demonstrates the district court's understanding of Mr. Kibble's health conditions, the conditions at FCI Elkton, and the severe risks arising out of those circumstances. *Kibble*, 2020 WL 3470508, at *2 ("Accordingly, [the] defendant–due to his preexisting medical conditions–is at a higher risk of health problems resulting from COVID-19."); *id.* (explaining that FCI Elkton was "suffering from a significant outbreak of COVID-19" and that it "has been one of the hardest hit institutions in the country"). Viewed as a whole, the district court's decision to deny Mr. Kibble's motion was not arbitrary, irrational, or incurably premised upon legal error. For these reasons, I join in the Court's decision to affirm.

QUATTLEBAUM, Circuit Judge, concurring**:**

I write separately to briefly address one aspect of Chief Judge Gregory's concurring opinion. Relying primarily on data from the Centers for Disease Control, he outlines a framework to evaluate the threshold requirement for compassionate release—the presence of "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). He then concludes that the district court properly made such a finding in this case. This opinion is not the opinion of our Court, and the issue of "extraordinary and compelling reasons" is not even before us.

The district court did find that Kibble's health conditions and the spread of COVID-19 at Elkton were "extraordinary and compelling reasons" sufficient to consider compassionate release. But the government did not challenge that finding as an alternative means for affirming the district court's judgment. So, no party briefed the issue. And without the benefits of adversarial testing on appeal, we have properly avoided suggesting a definitive answer to an evolving pandemic-centric question.

The pace of vaccinations for COVID-19—including in prisons—is accelerating. For that and other reasons, the COVID-19 pandemic continues to evolve, seemingly improving but surely changing. Even so, we may still have occasion to grapple with the meaning of "extraordinary and compelling reasons." But in my view, we should wait until it is before us to comment on that important legal issue.