**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-7066

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

KEANAN DEQUEZ BOND, a/k/a Sticks,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Louise W. Flanagan, District Judge.  (4:16−cr−00030−FL−2)

Argued:  October 25, 2022                       Decided:  January 3, 2022

Before WILKINSON and DIAZ, Circuit Judges, and MOTZ, Senior Circuit Judge.

Affirmed by published opinion.  Judge Diaz wrote the opinion, in which Judge Wilkinson and Senior Judge Motz joined.

**ARGUED:**  Jorgelina E. Araneda, ARANEDA LAW FIRM, Raleigh, North Carolina, for Appellant.  Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  G. Norman Acker, III, Acting United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

DIAZ, Circuit Judge:

Keanan Dequez Bond, facing at least 1,054 months in prison for a string of armed robberies, reached a plea agreement and instead was sentenced to 384 months. Soon after, Congress passed the First Step Act, changing the calculations of relevant mandatory minimums. *See* First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221–22. Had Bond been sentenced after the Act became law, his minimum sentence would have been 168 months, less than half of his current sentence. Yet the district court denied Bond's motion for compassionate release in part because it "decline[d] to disturb the parties' carefully negotiated [plea] agreement." J.A. 162. Bond appeals, arguing the district court improperly considered the plea deal.

Because the district court acted well within its discretion in denying Bond's motion for compassionate release, we affirm.


I.

In 2015, Bond and an accomplice robbed several stores in North Carolina. They pointed guns at clerks and customers, including at a mother and her child. They also led police on a high-speed chase, at first managing to evade capture, but were eventually arrested.

A grand jury charged Bond on nine counts, including for Hobbs Act robbery. If convicted on all, Bond's advisory Guidelines range would have been 1,054 to 1,071 months in prison. Instead, Bond pleaded guilty to two counts of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (2012)

2

(amended 2018). The district court imposed the statutory mandatory minimum sentence: 84 months of imprisonment on the first § 924(c) offense and 300 months on the second, given it "stacked" with the first.[1]

Bond appealed, arguing that Hobbs Act robbery isn't a crime of violence under § 924(c)(3). While his appeal was pending, Congress passed the First Step Act. Section 403 of the Act abrogated the Supreme Court's interpretation of § 924(c) convictions, stating that enhanced minimums can only apply "after a prior conviction under [§ 924(c)] has become final." § 403(a), 132 Stat. at 5222. If Bond were sentenced after passage of the First Step Act, he would have faced a minimum sentence of 168 months, rather than 384. Bond added this argument to his appeal.

We affirmed Bond's convictions and sentence. We'd held before that "Hobbs Act robbery constitutes a crime of violence under the force clause of Section 924(c)," *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019), dispensing with Bond's first claim. *United States v. Bond*, 799 F. App'x 209, 210 (4th Cir. 2020). As for Bond's First Step Act claim, Congress expressly limited the retroactivity provision, and we held "that § 403 of the First Step Act does not apply retroactively to cases pending on direct appeal when it was enacted." *Id.*

---

[1] 18 U.S.C. § 924(c) imposes a five- to ten-year mandatory minimum prison sentence for the first offense and a 25-year mandatory minimum for a subsequent conviction. Previously, courts treated the second of two § 924(c) convictions in the same case as a "subsequent" conviction, which "stacked" on the 25-year mandatory minimum. *See Deal v. United States*, 508 U.S. 129, 132–33 (1993). Congress ended this practice with the passage of the First Step Act.

Bond then moved in the district court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). The district court denied his motion. The court agreed with Bond that the discrepancy between his stacked minimum sentence and a First Step Act minimum sentence constituted an extraordinary and compelling reason for compassionate release. J.A. 161 (citing *United States v. McCoy*, 981 F.3d 271, 285–86 (4th Cir. 2020)). But it held that the § 3553(a) factors weighed against reducing Bond's sentence.

The district court considered the plea agreement and the counts dismissed, noting that Bond's ultimate sentence was a significant reduction against the 1,000-plus months in prison he faced. *Id.* The court refused to "disregard the dismissed counts and the benefits that [Bond] received from the plea agreement," noting that Bond got "the exact sentence bargained for." *Id.*

The district court also determined that the "nature of these robberies . . . reflects the need for a serious sentence in this case," citing the violent use of guns, restraint of victims, and traumatic experiences of the mother and child. *Id.* at 162. While the court acknowledged Bond was doing well in prison, it found those positives did "not justify a sentence reduction when weighed against the offense conduct, the conduct underlying the dismissed counts, the benefits conferred by the plea agreement, and the remaining factors set forth [in the opinion]." *Id.* at 162–63.

"Having fully considered defendant's arguments, together with the full record of this case in light of the § 3553(a) factors," the district court concluded that "the current sentence remain[ed] necessary to reflect the seriousness of the offense conduct, protect the public from further crimes of defendant, provide specific and general deterrence, and to

4

account for the significant benefits conferred on both parties by the plea agreement in this case." *Id.* at 163.

This appeal followed.

## II.

In general, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But a district court may reduce a sentence through a motion for compassionate release. *Id.* § 3582(c)(1)(A). If the defendant has administratively exhausted a claim for release, the district court analyzes the motion in two steps.

First, the court determines whether the defendant is eligible for a sentence reduction. A defendant is eligible if the court finds "extraordinary and compelling reasons warrant such a reduction." *Id.* § 3582(c)(1)(A)(i); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021). Following our case law, the district court found that Bond's "excessive sentence relative to the mandatory minimum applicable today constitutes extraordinary and compelling reasons for release." J.A. 161 (citing *McCoy*, 981 F.3d at 285–86). Neither side challenges this conclusion.

Second, the court considers "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also Kibble*, 992 F.3d at 331. Bond argues that consideration of plea agreements falls outside those factors. He also claims the court's denial of compassionate release was unreasonable given Congress's intent in passing the First Step Act. We disagree with both contentions.

5

A.

Bond's primary attack is that a district court can't consider a plea bargain when weighing the § 3553(a) factors. Although § 3553(a) doesn't explicitly mention plea agreements, district courts "enjoy[] broad discretion" when considering the factors in a compassionate-release motion. *Kibble*, 992 F.3d at 330.

We've held that "a particular fact need not be mentioned specifically in Section 3553(a) to be considered in the district court's sentencing calculus; many case-specific facts fit under the broad umbrella of the Section 3553(a) factors." *United States v. Jackson*, 952 F.3d 492, 500 (4th Cir. 2020). And Bond identifies no authority forbidding courts from weighing plea agreements.[2] *Cf. id.* at 499 ("Jackson identifies no authority forbidding a court from taking banked time into account [in analyzing the Section 3553(a) factors], and we are aware of none.").

Although there may be several factors that encompass plea agreements, we note one example. Section 3553(a)(2)(A) states a court must consider the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just

---

[2] In fact, other courts have considered plea agreements when weighing compassionate release. *See, e.g.*, *United States v. Ranieri*, 468 F. Supp. 3d 566, 568 (W.D.N.Y. 2020) (considering the "significant and often violent criminal conduct" recited in the plea when denying a compassionate release motion); *United States v. Dean*, 494 F. Supp. 3d 252, 256 (W.D.N.Y. 2020) ("[R]educing Defendant's sentence would thwart the mandatory minimum statutory incarceration called for by the statutes of conviction, that Defendant agreed to as part of his plea agreement."); *United States v. Kemp*, No. 3:07-CR-151-CRS, 2020 WL 7061851, at *3 (W.D. Ky. Dec. 2, 2020) (noting the plea agreement "allowed [the defendant] to avoid . . . a mandatory life sentence" when denying compassionate release). Though these cases concerned compassionate release due to COVID-19, the logic is fitting here.

6

punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). In its order denying compassionate release, the district court balanced the benefit of the plea agreement against the stacked minimum sentence for all charged counts, concluding the sentence remained a fair punishment for Bond's conduct.

The district court stated that, without the dropped counts, Bond faced a Guidelines range of "1,054 to 1,071 months' imprisonment." J.A. 161. And it noted that "[Bond] now seeks a sentence reduction of an additional 216 months on top of the 670 months he avoided by entering into the plea agreement with the government." *Id.*

The district court declined to grant such relief, suggesting that modifying the sentence would "disturb the parties' carefully negotiated agreement." *Id.* at 162. The court also explained that Bond "received the exact sentence bargained for in the plea agreement," implying that the court should respect the terms absent compelling circumstances. *Id.* at 161.

We agree with the district court that (1) considering the plea agreement in this context reflected a "respect for the law" and (2) reducing Bond's sentence so far below the initial Guidelines range wouldn't be "just punishment" for Bond's crimes. *Cf. Jackson*, 952 F.3d at 501 (finding a district court fairly considered "banked time" under public protection and deterrence factors of § 3553(a)). The district court did not err in refusing to modify Bond's sentence.

## B.

Bond complains that denying him compassionate release is at odds with Congress's intent in passing the First Step Act. But he ignores Congress's full purpose. Bond is correct

that the Act "was the result of years of Congressional debate on how to reduce the size of the federal prison population." Appellant Br. at 5. But that doesn't mean Congress sanctioned sentence reductions for all.

Case in point: Congress didn't make the First Step Act retroactive. Pub. L. No. 115-391, 132 Stat. 5194, 5222; *see also United States v. Jordan*, 952 F.3d 160, 171–72 (4th Cir. 2020). So Congress didn't grant Bond a sentence reduction as a matter of right. *See McCoy*, 981 F.3d at 287 ("[N]ot *all* defendants convicted under § 924(c) should receive new sentences, but [] the courts should be empowered to relieve *some* defendants of those sentences on a case-by-case basis." (cleaned up)). Indeed, we already ruled on the issue in his first appeal. *See Bond*, 799 F. App'x at 210. And compassionate release is permissive, not mandatory.

Bond counters that Congress determined that stacking led to overly punitive minimum sentences. Perhaps, but timing matters. Bond's original stacked sentence was properly calculated when imposed. And in any event, the district court's task in weighing compassionate release "was not to assess the correctness of the original sentence it imposed. Rather, its task was to determine whether the § 3553(a) factors counseled against a sentence reduction in light of the new, extraordinary circumstances identified." *Kibble*, 992 F.3d at 334 (Gregory, C.J., concurring).

The district court considered the relevant factors and concluded that the original sentence remained appropriate. Especially given our highly deferential standard of review, the district court was well within its purview to deny Bond's motion.

*AFFIRMED*

8