**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-4613**

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

MICHAEL ATTILIO MANGARELLA,

            Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:06-cr-00151-FDW-DCK-3)

Submitted: June 29, 2012            Decided: July 20, 2012

Before TRAXLER, Chief Judge, and GREGORY and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Chiege O. Kalu Okwara, LAW OFFICE OF CHIEGE O. KALU OKWARA, Charlotte, North Carolina, for Appellant. Lanny A. Breuer, Assistant Attorney General, John D. Buretta, Acting Deputy Assistant Attorney General, Ellen R. Meltzer, Patrick M. Donley, Michael A. Rotker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael Attilio Mangarella was convicted by a jury of conspiracy to defraud the United States, 18 U.S.C. § 371 (2006), and multiple counts of wire fraud, 18 U.S.C.A. § 1343 (West Supp. 2011), 18 U.S.C. § 2 (2006), after he was extradited from Costa Rica where he and others operated a fraudulent sweepstakes scheme aimed at U.S. citizens. Initially, Mangarella was sentenced to a term of 600 months' imprisonment, but while his appeal was pending, we vacated the sentence of his co-defendant, Giuseppe Pileggi, who had received the same term, on the ground that it was a de facto life sentence which was not in accord with the assurances given to Costa Rica.[*] United States v. Pileggi, 361 F. App'x 475, 478-79 (4th Cir. 2010). Before briefing was completed, Mangarella moved to remand his case for resentencing, and the motion was granted.

On remand, the district court adopted its previous rulings on Mangarella's objections to the presentence report and imposed a sentence of 360 months, as well as ordering restitution of $2,687,501.47 and forfeiture of $10 million. Because no count carried a statutory maximum equal to 360 months, in order to achieve that total sentence the court

---

[*] The government inadvertently failed to inform the district court accurately about the extradition agreement.

imposed the maximum 60-month sentence on Count One, a 60-month sentence on Count Two, and concurrent 240-month sentences on the remaining counts, with the sentences for Counts One and Two to run consecutive to each other and to the remaining 240-month sentences. See U.S. Sentencing Guidelines Manual § 5G1.2(d) (2010) (instructing sentencing court to impose consecutive sentences "to the extent necessary to produce a combined sentence equal to the total punishment"). On appeal, Mangarella challenges both his convictions and sentence.

We first address Mangarella's two claims of error with respect to his convictions. Mangarella argues that the district court plainly erred by failing to instruct the jury sua sponte on venue. A defendant has a right to be tried in the state and district where the alleged crime occurred. U.S. Const. art III, § 2, cl. 3; amend. VI; see also Fed. R. Crim. P. 18. Mangarella did not object to venue in the district court. Consequently, the issue is waived on appeal. United States v. Ebersole, 411 F.3d 517, 527-28 (4th Cir. 2005); United States v. Stewart, 256 F.3d 231, 238 (4th Cir. 2001). In any case, venue was proper in the Western District of North Carolina because all the wire fraud counts involved Western Union transfers which were processed in Charlotte, North Carolina.

Mangarella also claims that the district court abused its discretion in allowing his co-conspirators to authenticate

his handwritings. Herman Kankrini and Larry Cunningham testified at trial about various handwritten materials that were seized from Mangarella's call center in Costa Rica on the day he was arrested. The materials had been admitted without objection as government exhibits. Kankrini testified that Mangarella had written the employee rules that were posted in the call center. Cunningham identified a document as the opening pitch used when a victim was first contacted, and said Mangarella had written it. He also recognized the office rules as having been written by Mangarella. In addition, Kankrini testified that he had read many handwritten letters Mangarella sent him during the year they were in jail in Costa Rica.

Mangarella now claims that the documents containing his handwriting were not properly authenticated under Fed. R. Evid. 901(b)(7), which pertains to public records. However, under Fed. R. Evid. 901(b)(2), expert opinion on handwriting is not necessary. <u>United States v. Dozie</u>, 27 F.3d 95, 98 (4th Cir. 1994). Instead, a handwritten document is sufficiently authenticated if a non-expert testifies, as here, that the handwriting is genuine, based on a familiarity that was not acquired for the litigation. Mangarella also asserts that Kankrini and Cunningham did not explain how they were familiar with his handwriting, but the record reveals that they did. To

4

the extent that Mangarella preserved the issue of authentication, it is meritless.

With respect to Mangarella's sentence, we review a sentence under a deferential abuse-of-discretion standard, necessitating consideration of both the procedural and substantive reasonableness of the sentence. Gall v. United States, 552 U.S. 38, 41, 51 (2007). Improperly calculating the advisory Guidelines range is a significant procedural error. Id.

Mangarella first claims that the district court clearly erred in denying him an adjustment for acceptance of responsibility, USSG § 3E1.1. A defendant who goes to trial and is convicted is eligible for a reduction for acceptance of responsibility only if his pre-trial statements and conduct demonstrate acceptance of responsibility and he goes to trial to assert and preserve issues that do not relate to factual guilt. It does not apply to a defendant who denies "the essential factual elements of guilt" and "puts the government to its burden of proof at trial." USSG § 3E1.1 cmt. n.2. The defendant has the burden of proving to the court by a preponderance of the evidence that he has affirmatively accepted personal responsibility for his criminal conduct. United States v. Nale, 101 F.3d 1000, 1005 (4th Cir. 1996).

Mangarella argues that he acknowledged his guilt before trial. The government concedes that Mangarella made certain admissions during two proffer sessions after he was extradited to the United States. However, when no plea agreement was reached, Mangarella moved to suppress statements he made to informants in Costa Rica after his arrest, as well as the incriminating statements he made during the proffer sessions. At the suppression hearing, Mangarella testified that his first lawyer pressured him into making the proffers and that he did so because the attorney led him to believe that he might receive immunity from prosecution and witness protection for his wife and children. Mangarella also testified that he was barely literate and did not understand much of what transpired during the time he made the proffers. After the court denied his suppression motion, Mangarella went to trial, contesting his guilt. In his post-conviction interview with the probation officer, Mangarella said he drank heavily and was intoxicated most of the time he was in Costa Rica, again suggesting that he was not really responsible for his criminal conduct. On these facts, the district court did not clearly err in denying Mangarella a reduction for acceptance of responsibility.

Next, Mangarella contests the application of Guidelines enhancements because they were not included in the extradition agreement. The "rule of specialty" permits a person

6

extradited to the United States to be tried only for the offense or offenses for which extradition was granted. See United States v. Rauscher, 119 U.S. 407, 430 (1886); see also Kasi v. Angelone, 300 F.3d 487, 500 (4th Cir. 2002). The extradition treaty between the United States and Costa Rica incorporates the rule of specialty. United States v. Anderson, 472 F.3d 662, 665 n.1 (9th Cir. 2006). Costa Rica extradited Mangarella with the specific assurance that he would not be tried or punished for offenses other than those for which extradition was granted. Whether the district court violated the rule of specialty is a legal issue reviewed de novo. United States v. Al-Hamdi, 356 F.3d 564, 569 (4th Cir. 2004); see also United States v. Lomeli, 596 F.3d 496, 499 (8th Cir. 2010).

Mangarella contends that sentencing enhancements that increased his offense level above the base offense level of 7 constituted a violation of the extradition agreement because they were neither charged in the indictment nor included in the extradition documents. We conclude that consideration of uncharged conduct to determine the sentence did not violate the rule of specialty. See Lomeli, 596 F.3d at 503 (criminal history); United States v. Garrido-Santana, 360 F.3d 565, 578 (6th Cir. 2004) (obstruction of justice); United States v. Lazarevich, 147 F.3d 1061, 1063-65 (9th Cir. 1998) (upward departure for child abduction after conviction for passport

7

fraud); <u>United States v. Saccoccia</u>, 58 F.3d 754, 783-87 (1st Cir. 1995) (criminal forfeiture).

Mangarella suggests that the maximum sentence he could receive was twenty-five years because anything more would violate the extradition agreement. As he did in the district court, he points to the statutory maximum of five years for Count One and twenty years for the remaining counts of conviction. However, no error occurred. The district court imposed the statutory maximum for each count (with a lesser sentence on Count Two), and stacked the sentences to the extent necessary to achieve a sentence within the Guidelines range, following the procedure directed in USSG § 5G1.2(d). The extradition agreement prohibited a sentence of death or one that would require him to spend the rest of his natural life in prison. The district court was careful to impose a sentence that would result in Mangarella's release when he was in his seventies.

Relying on <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), Mangarella next claims that the only permissible enhancement was the loss amount, which was found by the jury in a special verdict form, because the facts supporting the other enhancements were not submitted to the jury and found beyond a reasonable doubt. Where, as here, the Guidelines are treated as advisory and the sentence does not exceed the statutory maximum,

8

this argument is without merit.  United States v. Blauvelt, 638 F.3d 281, 293 (4th Cir.), cert. denied, 132 S. Ct. 111 (2011). Sentence enhancements are generally factual issues determined by a preponderance of the evidence.  Id.

Mangarella also contends that the district court clearly erred in finding that the offense involved more than 250 victims because only the 182 victims who filed claims for restitution are listed in the presentence report.  However, the district court noted that the evidence presented at trial established that the offense involved far more than 250 victims. Thousands of victim sheets with the amounts they remitted were seized from Mangarella's call center when he was arrested.  The district court did not clearly err in making the enhancement.

In the presentence report, the probation officer recommended a 2-level increase under USSG § 2B1.1(b)(13)(B) for possession of a firearm in connection with the offense based on information given by co-conspirator Carlo Testore.  Testore testified at Mangarella's trial but did not mention that Mangarella had possessed a firearm.  James Martin, an agent with Immigration and Customs Enforcement, testified at Mangarella's sentencing that he interviewed Testore and that Testore said that, during a period when he was not working with Mangarella, he went to Mangarella's call center in Costa Rica to talk about money Mangarella owed him relating to a failed coin business

9

they had previously had together. Testore told Agent Martin that, during the conversation, Mangarella lifted his shirt to show that he had a gun in his waistband, which he felt was Mangarella's way of discouraging him from asking for the money. The district court found that Martin was a credible witness and that Mangarella possessed the gun in connection with the telemarketing scheme because he had it at the call center "in furtherance of the conspiracy" and "was clearly using it as security at the call center."

Mangarella first argues that Testore was not a credible source because he had a conflict with Mangarella and thus had a motive to lie. However, the district court may consider relevant information that it deems to have "sufficient indicia of reliability to support its probable accuracy" to resolve disputed matters at sentencing. USSG § 6A1.3(a).

Second, Mangarella contends that the government did not prove that he possessed the gun in connection with the mail fraud offense. Because firearms are not generally regarded as tools of the trade in mail fraud cases, see United States v. Aslan, 644 F.3d 526, 551-52 (7th Cir. 2011), the mere presence of Mangarella's firearm at the call center is not necessarily sufficient to support the enhancement. However, the government points out that testimony at Mangarella's trial established that the usual practice for telemarketing schemes operating in Costa

10

Rica was to have runners regularly pick up wire transfers from victims and bring the cash to the call center. When Mangarella was arrested at his call center, he had $3408 in cash on his person. Another $40,000 in cash was seized from his home. Given the security concerns implicit at the call center, the district court's determination that Mangarella possessed the firearm in connection with the wire fraud offense is not clearly erroneous.

Mangarella maintains that the 4-level role adjustment he received under USSG § 3B1.1(a) was unwarranted because he was an equal partner or employee in the various call centers he was associated with; however, the trial evidence demonstrated that he was both an organizer and leader in the telemarketing scheme. The record discloses that the testimony of government investigators and co-conspirators established that Mangarella was involved in fraudulent sweepstakes operations from the early 2000's until his arrest in 2006, during which time he owned seven call centers at various times, recruited others into the business, wrote scripts to teach employees how to make the initial pitch to victims and how to induce the victim to send additional money after an initial payment. He managed at least one of the call centers as the boss, performing the administrative duties, and supervising the callers. In another instance, he demanded a larger ownership share when setting up a

new call center with three partners, where he represented himself as the leader who had the knowledge, the equipment, and the contacts.  In light of this evidence, which the district court found credible, the 4-level adjustment was not clearly erroneous.

Last, Mangarella maintains that his 360-month sentence is unreasonable and that the district court failed to give an adequate explanation for giving him a longer sentence than some of his co-conspirators.  Gall, 552 U.S. at 50; United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009).  Mangarella's below-Guidelines sentence is entitled to a presumption of reasonableness.  United States v. Susi, 674 F.3d 278, 289 (4th Cir. 2012).  Moreover, the district court discussed most of the § 3553(a) factors, addressed the need to avoid disparity, and noted the seriousness of Mangarella's current offense, his previous serious offenses, and his apparent lack of remorse.  Thus, the district court's explanation was adequate to permit appellate review.

We therefore affirm the district court's judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

12