**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-7912

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL ATTILIO MANGARELLA,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, District Judge.  (3:06-cr-00151-FDW-DCK-3)

Argued:  September 13, 2022                          Decided:  January 10, 2023

Before GREGORY, Chief Judge, and KING and HARRIS, Circuit Judges.

Vacated and remanded by published opinion.  Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge King joined.

**ARGUED:**  John Stephen Tagert, MCGUIREWOODS, LLP, Washington, D.C., for Appellant.  Ross Brandon Goldman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Brian D. Boone, ALSTON & BIRD LLP, Charlotte, North Carolina, for Appellant.  Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

PAMELA HARRIS, Circuit Judge:

In July 2020, Michael Attilio Mangarella filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), relying primarily on his vulnerability to COVID-19 due to his advanced age and chronic lung-related health conditions. Although the government originally supported Mangarella's motion, it later changed its position, and the district court ultimately denied relief.

Mangarella now appeals that denial, arguing in part that the district court, in weighing the sentencing factors outlined in 18 U.S.C. § 3553(a), failed to address or consider his heightened risk of death or serious illness if infected with COVID-19. We agree with Mangarella on that score, and therefore vacate the district court's denial of compassionate release and remand for reconsideration.

## I.

We begin by briefly describing Michael Attilio Mangarella's conviction and sentencing, and then his original compassionate release motion. We turn then to the focus of this appeal: Mangarella's subsequent post-COVID-19 emergency motion for compassionate release, the proceedings that followed, and the district court's ultimate denial of relief.

## A.

In 2008, a jury convicted Michael Attilio Mangarella of conspiracy to defraud the United States, *see* 18 U.S.C. § 371, and multiple counts of wire fraud, *see* 18 U.S.C. §§ 1343, 2, after he was extradited from Costa Rica, where he and others operated a

fraudulent sweepstakes scheme that targeted United States citizens. *United States v. Mangarella*, 489 F. App'x 648, 650 (4th Cir. 2012) (per curiam). At sentencing, the district court determined that Mangarella faced a Sentencing Guidelines range of life imprisonment, before accounting for statutory maximum penalties. Describing the sweepstakes scheme as an especially "heinous" white-collar crime that cost many naïve individuals their life savings, Gov't's Suppl. App. 131–32, the court sentenced Mangarella to a prison term of 600 months, or 50 years. *Mangarella*, 489 F. App'x at 650.

While Mangarella's appeal to this court was pending, we vacated the sentence of his co-defendant, Giuseppe Pileggi, who also had been sentenced, by the same district court, to 600 months' imprisonment. *Id.* That sentence, we held, constituted a de facto life sentence, contrary to diplomatic assurances given by the United States to Costa Rica when it extradited the co-conspirators. *See United States v. Pileggi*, 361 F. App'x 475, 477–79 (4th Cir. 2010). Given that decision, we granted Mangarella's motion to remand his case, as well, for resentencing. *Mangarella*, 489 F. App'x at 650–51. This time, the district court imposed a prison sentence of 360 months, or 30 years, along with multi-million-dollar restitution and forfeiture assessments. *Id.* at 651. Mangarella appealed again, and we affirmed the district court's judgment. *Id.* at 654.

**B.**

In December 2019 – before the onset of the COVID-19 pandemic – Mangarella filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). In seeking a reduced sentence, Mangarella, who was 65 years old at the time, relied primarily on his age and certain serious medical conditions – including emphysema and chronic obstructive

3

pulmonary disease ("COPD") – as well as on his good conduct in prison during the more than 13 years he had already served.

The district court denied Mangarella's motion. *United States v. Mangarella*, No. 3:06-cr-00151-FDW-DCK-3, 2020 WL 1291835, at *1 (W.D.N.C. Mar. 16, 2020). It noted that compassionate release is available under § 3582(c)(1)(A)(i) only where "extraordinary and compelling reasons" warrant a sentence reduction, and where a reduction would be "consistent with applicable policy statements" issued by the Sentencing Commission. *See id.* at *2 (quoting § 3582(c)(1)(A)(i)). Here, the court determined, although Mangarella had "highlight[ed] several medical conditions," he had failed to establish that he was experiencing "a serious deterioration in physical or mental health because of the aging process," *id.* at *3, as required by what the court and parties understood to be the controlling Sentencing Commission policy statement, *id.* at *2 (discussing U.S.S.G. § 1B1.13, Application Note 1(B)).[1] Moreover, the court continued, compassionate release may be granted only after consideration of the sentencing factors set out in § 3553(a). *Id.* at *2 (quoting § 3582(c)(1)(A)(i)). And while Mangarella's threshold failure to establish "extraordinary and compelling" reasons rendered a "full evaluation" under § 3553(a) unnecessary, any such evaluation also would "weigh[]

---

[1] The assumption that Mangarella could show "extraordinary and compelling reasons" only by satisfying the conditions listed in Guideline § 1B1.13 turned out to be mistaken. Months after the district court issued its decision, we held in *United States v. McCoy*, 981 F.3d 271, 280–84 (4th Cir. 2020), that § 1B1.13 applies to compassionate release motions filed by the Bureau of Prisons but not to defendant-filed motions like Mangarella's. We need not address this point further, as the district court's denial of Mangarella's initial, pre-COVID-19 motion is not at issue on appeal.

4

against" release, in part because Mangarella's 360-month sentence had already been reduced from the original 600 months. *Id.* at *3.

By the time the district court denied Mangarella's motion in mid-March of 2020, the COVID-19 crisis was imminent. And approximately two weeks after the district court's decision, Mangarella, still pro se, moved for reconsideration, citing the emerging COVID-19 pandemic. The district court denied that motion in a text-only order, reasoning that Mangarella had relied solely on "generalized information" about COVID-19 and not asserted any actual exposure or made an individualized case for relief. J.A. 24.

## C.

That brings us, finally, to the motion underlying this appeal: In July 2020, Mangarella, this time with the assistance of counsel, filed an emergency motion for reconsideration and compassionate release based on his exposure to and risk from COVID-19. Reconsideration was warranted, according to Mangarella, in light of the rapidly evolving pandemic and what was now a large and documented outbreak at his correctional facility.[2] And as a 66-year-old suffering from emphysema and COPD, he was at a heightened risk of death or serious illness should he become infected. That

---

[2] As noted, Mangarella's motion is styled in part as a motion for reconsideration akin to a Federal Rule of Civil Procedure 60(b) motion. There appears to be no dispute, however, that the emergence of the COVID-19 pandemic and the outbreak at Mangarella's facility constituted new developments justifying reconsideration. *See* Fed. R. Civ. P. 60(b)(6) (catch-all provision allowing for reconsideration for "any other reason that justifies relief"); J.A. 181 (government conceding that the "recent outbreak" at Mangarella's facility "justifies the relief of reconsideration" under Rule 60(b)(6)). The district court addressed Mangarella's motion on its merits, treating it as one for compassionate release, *see* S.J.A. 1032–35, and that is how we refer to it in this opinion.

particularized vulnerability to COVID-19, Mangarella argued, combined with his inability to protect himself from exposure at his facility, constituted an "extraordinary and compelling" reason for compassionate release.

That left, Mangarella recognized, the second step of the compassionate release analysis: When extraordinary and compelling reasons have been established, the court must consider the relevant § 3553(a) sentencing factors to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A). Here again, Mangarella relied primarily on his vulnerability to COVID-19. The seriousness of his offense, Mangarella conceded, warranted the 30-year sentence originally imposed. But the "sentencing purpose of just punishment," he argued, does not call for "a sentence that [now] includes exposure to a life-threatening illness." S.J.A. 932. Mangarella pointed as well to his exemplary conduct in prison as evidence that the purposes of punishment had been met and that he no longer posed a threat to public safety. Under all the circumstances, Mangarella contended, the time he had already served – over 14 years in prison – was "sufficient, but not greater than necessary," under the § 3553(a) factors.

The government agreed and filed a response in support of Mangarella's motion for compassionate release. Consistent with Department of Justice ("DOJ") guidance, the government first conceded that certain chronic medical conditions identified by the Centers for Disease Control ("CDC") as carrying a heightened risk of severe adverse consequences from COVID-19 qualify as "extraordinary and compelling" reasons for compassionate release. Because Mangarella's documented COPD and emphysema are CDC-identified risk factors, the government explained, and in light of the pandemic and the COVID-19

6

outbreak at his facility, Mangarella had established an "extraordinary and compelling" reason for release under § 3582(c)(1)(A)(i).

The government also took the position that the more than 14 years Mangarella had already served were "sufficient with respect to the § 3553(a) factors in the instant pandemic context." J.A. 181. Echoing Mangarella, the government explained that while "the severity" of Mangarella's original conduct "remains unchanged," what had changed was "the environment" where Mangarella was serving his sentence, which now exposed him to a "great and unforeseen risk of severe illness or death brought on by a global pandemic." J.A. 181–82 (cleaned up). The government's position reflected what it described as "an individualized evaluation of Mangarella's situation," including not only his health conditions and the impact of COVID-19 on his facility but also his "minimal disciplinary history" and "thoughtful" plan of release, all weighed under the § 3553(a) factors. *Id*.

The district court sua sponte called for a telephonic hearing to address the government's response, which it believed to be "materially inconsistent" with the government's position "on similar motions." J.A. 187. At the hearing, held the next day, the government explained that contrary to the district court's impression, it had consistently followed DOJ guidance in litigating compassionate release motions throughout the district. Under that guidance, prosecutors were directed to concede the existence of "extraordinary and compelling reasons" when defendants, like Mangarella, suffered from a health condition identified by the CDC as a COVID-19 risk factor. But at the second step of the analysis, the government emphasized, prosecutors retained discretion to make an

7

individualized assessment, under all of the circumstances, as to whether the § 3553(a) sentencing factors warranted relief.

The district court was not satisfied. In its view, the government had failed to justify its position under § 3553(a), providing "no analysis whatsoever" and effectively conceding that step of the analysis, as well. J.A. 206. In particular, the government had failed to explain why – "[d]isregarding COVID-19" – the same § 3553(a) factors that originally supported a 30-year sentence now pointed to a sentence of only 14 years. J.A. 207 ("Why is there a change? Disregarding COVID-19, why is there a change with the § 3553(a) factors?").[3] Accordingly, the district court directed the government to file a new response to Mangarella's motion. And this time, the court specified, the government should focus on the § 3553(a) factors *without* reference to COVID-19. J.A. 210 (instructing the government to address "the issue of why Mr. Mangarella without any explanation is entitled to a reduction of sentence [to] 14 years under § 3553(a), not [the] COVID-19 issue, but the § 3553(a) issue").

The government then changed its position, filing an amended response opposing Mangarella's motion for compassionate release. Having obtained Mangarella's presentence report and reviewed his criminal history, the government explained, it now was of the view that the § 3553(a) factors weighed against release. In particular, the

---

[3] The transcript from the telephonic hearing does not include section symbols in referring to § 3553(a). For the sake of clarity, we have inserted those symbols when quoting from the transcript here.

government emphasized, the seriousness of Mangarella's offense and the nature of his prior convictions counseled against reducing his sentence to the 14 years already served.[4]

After receiving the government's new response, the district court denied Mangarella's compassionate release motion. S.J.A. 1028, 1035. The court began its analysis by acknowledging Mangarella's health conditions and observing that Mangarella's motion "discuss[ed] the extraordinary and unprecedented challenges the coronavirus poses for the nation and the potential serious issues prisons face." S.J.A. 1032. Without further discussion, the district court assumed without deciding that Mangarella had demonstrated "extraordinary and compelling reasons" for release under § 3582(c)(1)(A)(i). *Id.* at 1034.[5]

But the court still was required, it explained, to "consider the factors listed in 18 U.S.C. § 3553(a)" before granting release, and those factors "weigh[ed] heavily in favor of [Mangarella's] continued imprisonment." *Id.* The court emphasized what it had already described as the "heinous" nature of Mangarella's fraud offense and his troubling criminal

---

[4] In its amended response, the government also informed the court that it had, at the court's direction, notified Mangarella's victims of his pending compassionate release motion.

[5] In considering the existence of "extraordinary and compelling reasons" for a sentence reduction, the district court again viewed itself as bound by Guideline § 1B1.13, as an "applicable policy statement[] issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i). S.J.A. 1033–34. As already explained, this court clarified – just a few days before the district court's ruling – that § 1B1.13 is not controlling as to a defendant-initiated motion like Mangarella's. *See McCoy*, 981 F.3d at 282. But we have no need to remedy the district court's error here, as that court was prepared to assume the existence of an "extraordinary and compelling" reason for release even under Guideline § 1B1.13. S.J.A. 1034.

history. *Id.* The court acknowledged that it had been many years since Mangarella's prior convictions and that there had been "some laudable examples of behavior since being incarcerated." *Id.* But it also noted that Mangarella's 30-year sentence was well below the Guidelines range of life imprisonment, in part because of "assurances made to the Costa Rican government." *Id.* at 1035. All told, the court concluded, the seriousness of Mangarella's offense, his extensive criminal history, and the need to protect the public warranted a significant sentence under the § 3553(a) factors and weighed against compassionate release. *Id.* The court did not mention, as part of its § 3553(a) analysis, Mangarella's primary argument under § 3553(a), originally endorsed by the government: that in light of the COVID-19 pandemic and Mangarella's special risk factors, a 30-year sentence – which now included a heightened risk of serious illness or death – was no longer warranted under § 3553(a).

Mangarella timely appealed.

## II.

Mangarella appeals the district court's denial of compassionate release on two independent grounds. First, he argues that the district court, by directing the government to reconsider its initial support of his motion, improperly departed from the principle of party presentation as recently set out in *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020). And second, he contends that the district court failed to address, in its § 3553(a) analysis, his arguments in support of compassionate release. We need not resolve here whether the unusual facts of this case amount to a violation of the party presentation

10

principle, because we agree with Mangarella's second contention. The district court's explanation of its denial of compassionate release does not reflect that it considered Mangarella's heightened vulnerability to COVID-19 in weighing the § 3553(a) factors, and for that reason alone, we must vacate the district court's judgment and remand for reconsideration.

As noted above, a district court must consider the § 3553(a) sentencing factors in deciding whether to exercise its discretion to grant a motion for compassionate release under § 3582(c)(1)(A)(i). *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021). In appropriate cases, that consideration must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments. *See United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019) (explaining that the district court must "factor[] into" its § 3553(a) analysis significant evidence of post-sentencing rehabilitation); *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021) (affirming denial of compassionate release where the "record . . . demonstrates that the district court reconsidered the § 3553(a) factors in view of" the risks to the defendant presented by COVID-19). That does not mean, as this court has emphasized, that a district court must "provide an exhaustive explanation analyzing every § 3553(a) factor," and "just how much of an explanation is required" will depend on the complexity of a given case. *United States v. Jenkins*, 22 F.4th 162, 170 (4th Cir. 2021); *see also High*, 997 F.3d at 188, 191. The "touchstone" is simply "whether the district court set forth enough to satisfy our court that it has *considered* the parties' arguments and has *a reasoned basis* for exercising its

11

own legal decisionmaking authority, so as to allow for meaningful appellate review." *High*, 997 F.3d at 190 (cleaned up).

Under that generous standard, the primary question here is whether we may call ourselves "satisfied" that the district court, in weighing the § 3553(a) factors, considered Mangarella's principal argument – originally joined by the government – for why those factors no longer warranted a 30-year sentence:  that given his particular risk profile with respect to COVID-19, his prison sentence now carried with it a significant chance of a life-threatening illness.  *Cf. Kibble*, 992 F.3d at 335 (Gregory, J., concurring) ("There is good reason to believe that, in some cases, a sentence that was 'sufficient but not greater than necessary' before the coronavirus pandemic may no longer meet that criteria.").  And that question is made more difficult by the fact that the district court's relatively thorough explanation for its determination under § 3553(a) – emphasizing the nature of Mangarella's offense and the details of his criminal history, with a reference to "some laudable examples" of post-sentencing conduct – does not include any mention of Mangarella's argument regarding COVID-19.  *See* S.J.A. 1034–35.

To be sure, that omission does not by itself establish that the district court failed to *consider* Mangarella's COVID-19-related risks, at least implicitly, in weighing the § 3553(a) factors.  There is no categorial requirement that a district court "invariably *acknowledge and address* each of [a] defendant's arguments" under § 3553(a).  *High*, 997 F.3d at 189; *see also Jenkins*, 22 F.4th at 170–71.  Here, before assuming without deciding the existence of a qualifying "extraordinary and compelling" reason for release, the district court did describe, if somewhat elliptically, Mangarella's COVID-19 concerns.

12

S.J.A. 1032. And in other cases, we have been prepared to assume that when a court considers or discusses a defendant's COVID-19 risks in connection with the "extraordinary and compelling" inquiry under § 3582(c)(1)(A)(i), it also has considered that claim in its weighing of the § 3553(a) factors. *See High*, 997 F.3d at 190–91; *Kibble*, 992 F.3d at 332.

Given the unusual facts of this case, however, we cannot make the same assumption here. In its colloquy with the government during the telephonic hearing, the district court appeared to take the view that it was inappropriate to consider COVID-19 or Mangarella's particular susceptibility to the disease not only as part of the "extraordinary and compelling reasons" analysis but also under the § 3553(a) factors. Indeed, its dissatisfaction with the government's initial brief in support of Mangarella's motion seems to have been driven by precisely this concern: that the government had improperly relied on Mangarella's heightened COVID-19 risks to argue that the § 3553(a) factors could now be satisfied by a 14-year sentence. *See, e.g.*, J.A. 207 ("I don't see why the Government agreed then that the 30-year sentence was appropriate [but] is now saying . . . a 30-year sentence is . . . inappropriate, [a] 14-year sentence is sufficient. Why is there a change? *Disregarding COVID-19*, why is there a change with the § 3553(a) factors?" (emphasis added)). And the court's final instructions to the government were that in reconsidering its position on Mangarella's motion, it should keep *separate*, in its analysis, the "COVID-19 issue" from the "§ 3553(a) issue." J.A. 210 (directing the government to "come back to the Court" with a new consideration of "why Mr. Mangarella without any explanation is entitled to a reduction of sentence [to] 14 years under § 3553(a), not [the] COVID-19 issue, but the § 3553(a) issue").

13

At oral argument before our court, the government suggested that the district court's commentary was ambiguous, and that it might have been objecting not to the government's *consideration* of Mangarella's COVID-19 risk under the § 3553(a) factors but only to the *weight* the government had assigned it. Perhaps. But the question for us is whether, as in *High*, 997 F.3d at 190, we can be "confident" that the district court considered a defendant's COVID-19 argument under the § 3553(a) factors, notwithstanding its failure to mention that argument in its explanation. And under the unusual circumstances of this case, we cannot say with any confidence that in denying Mangarella's motion, the district court properly "reconsidered the § 3553(a) factors in view of" his age and health conditions, the COVID-19 outbreak at his correctional facility, and the "severe risks arising out of those circumstances." *See Kibble*, 992 F.3d at 332.

We return to the underlying "touchstone" for our review: whether the district court set forth enough to satisfy us that it considered Mangarella's § 3553(a) argument regarding COVID-19 and had a reasoned basis for rejecting it, so as to "allow for meaningful appellate review." *High*, 997 F.3d at 190 (internal quotation marks omitted). Because it is not clear that the district court considered Mangarella's particular vulnerability to COVID-19 in weighing the § 3553(a) factors, we cannot meaningfully review its denial of Mangarella's motion for compassionate release. Accordingly, we vacate the district court's judgment and remand for reconsideration of Mangarella's motion.[6]

---

[6] Because we conclude that it is not clear the district court considered Mangarella's COVID-19-related arguments in weighing the § 3553(a) factors, we need not address whether, if it did, it had a "reasoned basis," *High*, 997 F.3d at 190 (emphasis omitted), for

14

## III.

For the foregoing reasons, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

rejecting them.  We note, however, that in its colloquy with Mangarella's counsel at the telephonic hearing, the district court appears to have taken the view that Mangarella could be protected from COVID-19 by being held "in isolation for two to three months." J.A. 202–03, *see also* J.A. 200 (suggesting possibility of ordering that Mangarella be moved "to an isolation cell").  Failing that, the district court seems to have done its own back-of-the-envelope calculation to conclude that, once infected, Mangarella would have a 99 percent chance of recovering from COVID-19.  J.A. 200 ("Once he gets sick, there's probably a 99 percent chance he will recover.  Or 98 percent – no, 99 percent.")  Given this commentary, and in the absence of any explanation from the district court, we would find it especially challenging here to engage in "meaningful appellate review" and assure ourselves of a "reasoned basis" for the court's denial of compassionate release.