**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-6319**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HARRY NOLAN MOODY,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:02−cr−00004−MR−4)

———————

Argued:  May 7, 2024                    Decided:  August 21, 2024

———————

Before DIAZ, Chief Judge, and WILKINSON and KING, Circuit Judges.

———————

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge King joined.

———————

**ARGUED:**  Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:**  John G. Baker, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

DIAZ, Chief Judge:

Harry Nolan Moody was convicted in 2002 for conspiring to manufacture and distribute methamphetamine. He was sentenced as a career offender to 360 months' imprisonment, the mandatory minimum. If sentenced today, though, Moody would no longer qualify as a career offender and the advisory minimum would be 210 months. Moody moved for compassionate release based on this disparity.

The district court denied relief. It held that the sentencing disparity, considering Moody's individual circumstances, didn't constitute an "extraordinary and compelling" reason for release under 18 U.S.C. § 3582(c)(1)(A)(i), and that the 18 U.S.C. § 3553(a) factors weighed against a reduced sentence. Finding no error, we affirm.

## I.

### A.

Moody and his coconspirators operated two methamphetamine labs in North Carolina. In 2002, a federal jury convicted Moody of conspiring to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846. It found that the offense involved "more than 50 grams of a mixture or substance containing a detectable amount of methamphetamine." J.A. 24.

The presentence report found that Moody was responsible for 2,151.44 grams of a methamphetamine mixture, which equated to a base offense level of 34. That drug quantity, the report explained, was the "potential methamphetamine yield" of the supplies seized from the two labs. J.A. 170. The report also applied a two-point enhancement for

2

discharging a hazardous substance into the environment, resulting in a total offense level of 36. It assigned Moody a criminal history category of VI.

But the report determined that Moody was a career offender, based on his instant § 846 conviction and three prior North Carolina assault convictions. *See* U.S.S.G. § 4B1.1(a) (2002) (requiring the career-offender designation when the defendant's instant conviction is a "crime of violence" or "controlled substance offense," and he has two prior convictions of either a "crime of violence" or "controlled substance offense"). That designation mandated an offense level of 37 and a criminal history category of VI,[1] resulting in a guidelines range of 360 months to life.

Moody objected to the presentence report's drug quantity finding, arguing that it was based on how the supplies were labeled—not their actual contents—and included supplies from a lab that he wasn't involved with. The district court sustained Moody's objection and, relying on the jury's verdict, limited the drug quantity for which Moody was responsible to 50 grams or more of a methamphetamine mixture.

The government argued, though, that the court should find Moody responsible for 50 grams of actual methamphetamine. It cited evidence about the labs' supplies and production and contrasted the actual methamphetamine produced to that of a mixture bearing "evidence of adulterants." J.A. 33. Moody didn't object.

---

[1] The career-offender offense table prescribes offense levels based on the statutory maximum of the defendant's instant conviction. U.S.S.G. § 4B1.1(b) (2002). The offense level from the table applies if it's greater than the otherwise applicable offense level. *Id.* In every case, though, a criminal history category of VI applies. *Id.*

The court agreed and found that a drug quantity of 50 grams of actual methamphetamine equated to a base offense level of 32. With the environmental enhancement, the court calculated a total offense level of 34.

But the court also found that Moody was a career offender, and that the designation's offense level of 37 governed. So it adopted the report's guidelines range and sentenced Moody to 360 months' imprisonment, the lowest possible sentence.[2]

B.

Twenty years later, Moody moved for compassionate release. He argued that the disparity between his original sentence and what he would face today constituted an extraordinary and compelling reason for release. He explained that today, he wouldn't be designated as a career offender because under *United States v. Simmons*, 917 F.3d 312 (4th Cir. 2019), his prior assault convictions no longer qualify as predicate offenses.[3]

The district court denied the motion. It found that Moody failed to show an extraordinary and compelling reason for release because the career-offender designation "only increased his offense level by one level"—from 36 to 37—and didn't impact his

---

[2] Moody was sentenced before *United States v. Booker*, which effectively held that the sentencing guidelines are advisory, not mandatory. *See* 543 U.S. 220, 245 (2005).

[3] We held in *Simmons* that the North Carolina offense of assault with a deadly weapon on a government official doesn't satisfy the career-offender designation's definition of "crime of violence." 917 F.3d at 320–21. As relevant to Moody, we explained that because the element of "assault" can be satisfied with a mens rea of "culpable negligence" under North Carolina law, such an offense is categorically disqualified as a "crime of violence." *Id.*

4

criminal history category. *See United States v. Moody*, No. 1:02-cr-00004, 2021 WL 4978655, at \*3 (W.D.N.C. Oct. 26, 2021).

Moody appealed, and we reversed. We found that the district court clearly erred in finding that the designation only affected Moody's offense level by one. The court, we explained, mistakenly relied on the presentence report's drug quantity finding instead of the sentencing court's. And because it used this erroneous finding to assess the relative effect of Moody's career-offender designation, we held that it abused its discretion.

We directed the court to (1) revisit "the sentencing court's determination as to the drug type and quantity attributable to Moody, particularly as that relates to the jury's finding as reflected in its verdict sheet," and (2) reevaluate the effect of the career-offender designation on the guidelines range. *United States v. Moody*, No. 21-7530, 2022 WL 2901737, at \*2 (4th Cir. July 22, 2022) (per curiam).

C.

On remand, Moody supplemented his motion. First, he argued that he was only responsible for 50 grams or more of a methamphetamine mixture. Second, he argued that he wouldn't be designated as a career offender today not only because his prior assault convictions no longer qualify as predicate offenses, but also because under *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), his § 846 conviction no longer qualifies.[4]

---

[4] *Norman* held that a § 846 conspiracy doesn't satisfy the career-offender designation's definition of "controlled substance offense." 935 F.3d at 239.

5

Without that designation, the drug quantity finding would dictate the base offense level, which Amendment 782 reduced by two points.[5]

Using a drug quantity of 50 grams of a methamphetamine mixture, Moody calculated the guidelines range today as 120 to 150 months, which he argued is a "dramatic disparity" from his original sentence. J.A. 107. But even with a drug quantity of 50 grams of actual methamphetamine, the guidelines range would be 210 to 262 months, which he noted is "still remarkable." J.A. 107. Moody contended that either disparity alone or "combined with . . . other factors"—such as his rehabilitation, time served, and age— constituted an extraordinary and compelling reason for release. J.A. 110.

The district court again denied the motion. First, the court found that Moody was responsible for at least 50 grams of actual methamphetamine. It explained that while the jury made a finding about the statutory sentencing range, the sentencing court made one about the guidelines range, which requires a lower standard of proof. But in any event, the district court said that any error in the sentencing court's calculation wasn't "cognizable" in a compassionate release motion. *See United States v. Moody*, No. 1:02-cr-00004, 2023 WL 2582620, at *5 (W.D.N.C. Mar. 20, 2023).

Second, it found that any sentencing disparity didn't amount to an extraordinary and compelling reason for release. The court doubted that it could consider Amendment 782's two-point reduction. So it calculated the guidelines range today as 262 to 327 months and

---

[5] Amendment 782—adopted by the Sentencing Commission in 2014—revised the guidelines applicable to drug offenses, including Moody's § 846 conspiracy, by lowering the base offense levels prescribed by the drug quantity table in U.S.S.G. § 2D1.1. *See* U.S.S.G. app. C at 59–69 (Supp. 2023).

6

concluded that the low-end differential of 98 months wasn't "so significant." *Id.* at *6. But alternatively, the court found that even if it accounted for Amendment 782's reduction, meaning the guidelines range today were 210 to 262 months, the low-end differential of 150 months also wasn't "so significant." *See id.*

The court explained that a "simple comparison" of the ranges wasn't sufficient, and that it needed to consider "how [Moody] would likely be sentenced today." *Id.* And today, the court concluded, Moody's sentence would likely be similar to the one he received.

The court reasoned that although Moody's § 846 conviction no longer qualifies as a career-offender predicate, his conduct "fall[s] squarely" within the enhancement's wheelhouse. *Id.* And given his criminal history and risk of recidivism, the court concluded that Moody would likely receive an upward variance sentence today.

The court considered that Moody (1) was 69 years old, (2) had a one-infraction disciplinary record, (3) had served almost 24 years in prison, (4) had completed 30 programs while incarcerated, and (5) had earned his GED. But it found that neither these factors nor the sentencing disparity—whether "singly or in combination"—constituted an extraordinary and compelling reason for release. *Id.* at *7. And, said the court, the § 3553(a) factors weighed against release.

This appeal followed.

II.

A.

We review a district court's denial of compassionate release for abuse of discretion. *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (quoting *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007)).

B.

Generally, a district court can't modify a sentence once imposed. 18 U.S.C. § 3582(c). But the district court may reduce a sentence under § 3582(c)(1)(A)(i), which is commonly known as the "compassionate-release exception." *See United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022).

A district court analyzes a compassionate release motion in two steps. First, it determines whether the defendant is eligible for a sentence reduction. *See United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023). To be eligible, the court must find that relief is warranted because of "extraordinary and compelling reasons" and "consistent with applicable policy statements issued by the Sentencing Commission." *High*, 997 F.3d at 186; *see* § 3582(c)(1)(A)(i). Second, the court considers whether the 18 U.S.C. § 3553(a) sentencing factors support relief. *Bond*, 56 F.4th at 384; § 3582(c)(1)(A)(i).

The Sentencing Commission issues policy statements that describe what qualifies as an extraordinary and compelling reason. 28 U.S.C. § 994(t). But when the district court

8

decided Moody's motion, no such statements applied to defendant-filed motions for compassionate release. *Cf. United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024). In that vacuum, we had said that district courts could make "their own independent determinations" about what reasons qualify as extraordinary or compelling. *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020).

## III.

Moody argues that in denying his motion for compassionate release, the district court abused its discretion in three ways: (1) by refusing to consider a sentencing disparity in its analysis of extraordinary and compelling reasons; (2) by applying an erroneous base offense level to calculate the guidelines range; and (3) by discounting the reasons that the career-offender designation no longer applies. We address each contention in turn.

### A.

We begin with Moody's claim that the district court refused to consider his sentencing disparity argument.

Absent the Sentencing Commission's guidance, a district court faced with a compassionate release motion may consider the disparity between the defendant's sentence and what he would receive today due to changes in sentencing law. *McCoy*, 981 F.3d at 286.

In *McCoy*, we reviewed in a consolidated appeal several grants of compassionate release to defendants subjected to sentence stacking under 18 U.S.C. § 924(c), which mandated consecutive sentences for multiple convictions of using firearms in connection

9

with certain offenses. *McCoy*, 981 F.3d at 277–79. The defendants had received sentences ranging from 35 to 53 years. *Id.* at 274. But Congress later eliminated this sentence stacking, such that if sentenced today, the defendants' sentences would be 16 to 30 years shorter. *See id.* at 277–79. Each district court held that these sentencing disparities were extraordinary and compelling enough to qualify for relief. *Id.*

We agreed, finding that the courts "appropriately considered" two features of the defendants' sentences: (1) their "sheer and unusual length[s]," and (2) the "gross disparity" between them and the ones imposed today. *Id.* at 285. As to the former, we found it relevant that the defendants' sentences were about twice as long as those imposed for offenses like murder and kidnapping. *Id.* As to the latter, we found it relevant that the disparities were "exceptionally dramatic" and a product of Congress's view that the original sentences were "longer than necessary or fair." *Id.* at 285–86.

Moody contends that these same features apply in his case, yet the district court refused to consider the sentencing disparity. He argues that his 360-month sentence is unusually long, especially compared to the sentences for more serious and violent crimes like murder and kidnapping, which in 2023, averaged 285 months and 199 months, respectively. U.S. Sent'g Comm'n, Statistical Information Packet: Fiscal Year 2023—Fourth Circuit 11 (2024).

10

Moody claims that he would receive a much shorter sentence today due to changes in law. His guidelines range today would be 210 to 262 months,[6] *see* U.S.S.G. § 5A, meaning that Congress now believes that the appropriate sentence for Moody's offense is up to 150 months shorter than what he received. According to Moody, many district courts within this circuit have found that a 150-month disparity satisfies the extraordinary and compelling reasons test. *See* Appellant's Br. at 10–11 (cataloging cases).

Even so, we made clear in *McCoy* that a sentencing disparity alone can't dictate the court's analysis. *See* 981 F.3d at 286. Rather, the court must make an "individualized assessment[] of [the] defendant's sentence" and give "full consideration [to] the defendant['s] individual circumstances." *Id.* (considering the defendants' relative ages at the time of their offenses, time served, and rehabilitative efforts).

The district court did just that here. It recognized that solely considering the sentencing disparity would be an "unpardonably sophomoric approach," and that it needed to conduct an individualized assessment of Moody's sentence and circumstances. *See Moody*, 2023 WL 2582620, at *6. It then reviewed Moody's extensive criminal history, risk of recidivism, and offense conduct, and found that Moody would likely receive a sentence today "not too dissimilar" to the one imposed. *Id.*

The court also considered Moody's time served, advanced age, and rehabilitative efforts. It found that while his rehabilitative efforts were "commendable," they weren't

---

[6] This guidelines range accounts for Amendment 782's two-point reduction to the base offense level for a drug quantity of 50 grams of actual methamphetamine. *See Supra* Part III.B.

"particularly remarkable" given the length of his incarceration. *Id.* at *7. And it found that Moody's "relatively advanced age" didn't necessarily reduce the risk of recidivism given his decades-long criminal history. *Id.*

That we or other courts may have reached a different conclusion is immaterial. Our review is limited to whether the district court abused its discretion. It did not.

## B.

Moody next complains that the district court's analysis of the sentencing disparity was flawed because it miscalculated today's guidelines range. According to Moody, the district court (1) ignored Amendment 782's two-point reduction, and (2) relied on an erroneous drug quantity. We disagree.

## 1.

Start with Moody's claim that the district court overlooked Amendment 782's effect on the guidelines range.

Amendment 782 (which is retroactive) lowered the base offense level for Moody's § 846 conviction by two points under U.S.S.G. § 2D1.1. *See Davis*, 99 F.4th at 656. Moody, though, wasn't eligible for the reduction because he was sentenced as a career offender under U.S.S.G. § 4B1.1. *Cf. Davis*, 99 F.4th at 656. But today, without the career-offender designation, Moody would be eligible. *Id.*

The district court questioned whether calculating the guidelines range in this way amounted to "a challenge to a sentencing determination . . . in a compassionate release motion," which *United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022), prohibits. *See Moody*, 2023 WL 2582620, at *6. Its doubts were misplaced.

12

A defendant can't challenge the validity of a sentence in a compassionate release motion. *See Ferguson*, 55 F.4th at 270. The federal habeas statute, 28 U.S.C. § 2255, is the "exclusive method" for doing so. *Id.* But in *Ferguson*, we said that the arguments in *McCoy*—which claimed that a nonretroactive change in the sentencing law merited relief—didn't impermissibly challenge the validity of a sentence. *See id.* at 271.

The same is true of Moody's sentencing disparity argument. Moody doesn't claim that his sentence was improper because a mistake occurred at his trial. Rather, he argues that his sentence today would be much shorter because of changes in law.

It's true that when the district court decided Moody's motion, we hadn't yet considered a disparity argument that involved the effect of Amendment 782 after removing a career-offender designation. But our precedent made clear that such an argument was permissible. *See Davis*, 99 F.4th at 656–58 (relying on *Ferguson* and *McCoy* to hold that the same changes in sentencing law alleged by Moody are permissible arguments for a compassionate-release motion).

Thus, the district court's contrary suggestion and its analysis of a 98-month disparity—which was based on a guidelines range that didn't include Amendment 782's two-point reduction—was incorrect.

Yet we need not reverse. The district court alternatively considered a 150-month disparity, which was based on a guidelines range that included the Amendment's reduction. And it held that even if Moody were granted the benefit of Amendment 782, "neither the analysis nor the result would be any different." *Moody*, 2023 WL 2582620, at *6 & n.11.

So Moody's claim that the court ignored the Amendment's effect is meritless.

13

2.

Moody also argues that the district court erred in calculating the guidelines range because it relied on an incorrect drug quantity to establish the base offense level.

Following this court's mandate, the district court reviewed the sentencing transcript and determined that the sentencing court found Moody responsible for 50 grams of actual methamphetamine. We agree. The sentencing court expressly found, "[T]he evidence is clear in my mind as to the 50 plus grams of actual methamphetamine, which brings the base offense level to 32." J.A. 36.

Moody insists, though, that the sentencing court intended to adopt the jury's verdict, which found him responsible for 50 grams of a methamphetamine mixture. The court, for example, questioned the presentence report's drug weight finding, given its divergence from the jury's verdict, and expressed that it wanted to determine the base offense level "solely related to what the jury found of 50 grams." J.A. 33.

But even accepting that portions of the transcript may support Moody's contention, these don't trump the sentencing court's unambiguous finding that Moody was responsible for 50 grams or more of actual methamphetamine. *Cf. United States v. Susi*, 674 F.3d 278, 287 (4th Cir. 2012) (finding that the sentencing court didn't punish the defendant for exercising his right to go to trial based on "the entirety of the sentencing transcript," even though "several portions" suggested otherwise when read in isolation).

And given the sentencing court's express finding, the district court's hands were tied for purposes of Moody's compassionate release motion. *Cf. United States v. Shields*, 48 F.4th 183, 191–92, 192 n.7 (3d Cir. 2022) (holding that the defendant could object to

14

the presence report's drug quantity in his compassionate release motion only because the sentencing court expressly declined to make a drug quantity finding before applying the career-offender designation). Moody's only avenue to attack the drug quantity finding is through § 2255.[7] *See Ferguson*, 55 F.4th at 270.

C.

Finally, Moody contends that the district court's explanation for rejecting his sentencing disparity argument was insufficient. Although the court accepted that his § 846 conviction no longer qualifies as a career-offender predicate, Moody claims that the court ignored his "principal argument" that his prior assault convictions also no longer qualify. Appellant's Br. at 16.

But there's "no 'categorical requirement' that a court acknowledge and address each of the defendant's arguments [for a reduced sentence] on the record." *United States v. Jenkins*, 22 F.4th 162, 171 (4th Cir. 2021) (citing *Chavez-Meza v United States*, 585 U.S. 109, 115–16 (2018)). Rather, the district court must "set forth enough to satisfy this court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority." *Id.* (cleaned up). The district court did so here.

Far from ignoring Moody's argument, the court thoroughly considered—and *agreed*—that Moody wouldn't qualify as a career offender if sentenced today. Yet the court provided a reasoned basis for concluding that the disparity "does not rise to the level

---

[7] In a string cite in his reply brief, Moody cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000), for the proposition that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. But Moody doesn't engage with this argument further, so neither do we.

15

of being an extraordinary and compelling reason for a sentence reduction." *Moody*, 2023 WL 2582620, at *6.

First, it found that the guidelines range didn't reflect "the seriousness" of Moody's "30-year history of criminal conduct" and "likelihood of recidivism." *Id.* It noted that Moody's criminal history points were well-above the threshold needed for the highest criminal history category, and that several of Moody's "most serious offenses, including three breaking and entering offenses," weren't even assigned points. *Id.*

Second, although Moody's § 846 conviction didn't qualify as a career-offender predicate, the offense conduct included activities that would qualify as a valid predicate. As a result, the court determined that the career-offender range was of "some significance" in arriving at an "appropriate sentence." *Id.*

As Moody conceded at oral argument, the district court's analysis wasn't wrong. Oral Argument at 10:05–10:16. And even if its analysis were incomplete because it didn't separately address Moody's argument about his prior assault convictions, the district court's prior denial of Moody's motion for compassionate release fills in the gaps. *Cf. United States v. Malone*, 57 F.4th 167, 174 (4th Cir. 2023) (considering the district court's extraordinary and compelling reasons analysis from its first denial of the defendant's motion when the court's second denial omitted an analysis).

In denying Moody relief the first time, the district court expressly considered that Moody's prior assault convictions no longer qualify as career-offender predicates. And it reached the same conclusion then as now: Any sentencing disparity was not an extraordinary and compelling reason to grant relief given Moody's criminal history, and

16

specifically his *other* prior offenses—such as "drug possession, assault, breaking [and] entering/burglary-type offenses, escaping from jail or prison, and revocations of probation." *United States v. Moody*, No. 1:02-cr-00004, 2021 WL 4978655, at *3 (W.D.N.C. Oct. 26, 2021).  We find no abuse of discretion in this analysis.

Moody also complains that the court didn't address several of his "key mitigating arguments."  Appellant's Br. at 16.  He contends that the court ignored (1) "readily available statistics" that similarly situated offenders receive lower sentences on average, Appellant's Br. at 18, and (2) that received the lowest possible sentence under the then-mandatory guidelines.  Without consideration of these facts, he says, the court's analysis of the sentence he would likely receive today wasn't sound.

While the district court must address the "central thesis" of a defendant's mitigating arguments, it needn't "address separately each supporting data point marshalled on [their] behalf." *See United States v. Nance*, 957 F.3d 204, 214 (4th Cir. 2020); *cf. High*, 997 F.3d at 187–89.  The arguments that Moody claims were ignored fall into the latter bucket.

At bottom, the court thoroughly considered Moody's central argument that a lower sentence was appropriate.  And the court, after assessing Moody's individual circumstances, explained why it disagreed.  That's all the law requires.

D.

As we've explained, the court acted well within its discretion in finding that Moody failed to establish extraordinary and compelling reasons for release.  Yet, even if we thought otherwise, we would still affirm based on the court's determination that the § 3553(a) sentencing factors weigh against relief.  *See Davis*, 99 F.4th at 659 ("Even if a

17

district court abuses its discretion in assessing whether the defendant presents extraordinary and compelling reasons for release, this Court may still affirm if the district court's consideration of the § 3553(a) factors was sound.").

The § 3553(a) factors that the district court must consider include the nature and circumstances of the offense; the defendant's history and characteristics; the need to provide just punishment, afford adequate deterrence, protect the public, and support rehabilitation; the kinds of sentences available; and the need to avoid unwarranted sentence disparities. *See* 18 U.S.C. § 3553(a); *see also High*, 997 F.3d at 186.

The district court enjoys "broad discretion" in analyzing these factors. *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022) (quoting *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021)). While it should consider the "circumstances at the time of the original offense" and "significant post-sentencing developments," it needn't address each of the defendant's arguments under § 3553(a). *United States v. Mangarella*, 57 F.4th 197, 203–04 (4th Cir. 2023).

In reviewing the court's analysis, we consider "the record as a whole." *Jenkins*, 22 F.4th at 171. And we generally assume that the court's § 3553(a) analysis incorporates any relevant circumstances considered in the court's extraordinary and compelling reasons inquiry. *See Mangarella*, 57 F.4th at 204.

The district court's analysis of the § 3553(a) factors was sound. It considered the "serious" nature of Moody's instant offense, the "large quantity of methamphetamine" it involved, and the danger the drugs posed to the public and the environment. *Moody*, 2023 WL 2582620, at *7. And it considered Moody's "extensive" criminal history, marked by

recidivism, and his "serious" convictions, to include assault on a law enforcement officer and assault inflicting serious injury. *Id.* at \*1, \*6.

The court also weighed the factors that favored Moody and explained why they didn't tip the scale. The court accounted for Moody's rehabilitative efforts and advanced age but found that neither outweighed the risk of recidivism suggested by his thirty-year criminal history. The court also considered the need to avoid unwarranted sentencing disparities. It recognized the lower sentence imposed on the conspiracy's ringleader but found that his criminal history didn't warrant "the kind of lengthy sentence" that Moody's extensive one demanded. *Id.* at \*7.

This analysis was more than "adequate to allow for meaningful appellate review." *High*, 997 F.3d at 189. And the court's determination that these factors disfavored release is both "rational and legitimate" under the statute. *See id.*

## IV.

The district court didn't abuse its discretion in holding that Moody failed to establish extraordinary and compelling reasons for release, and that (in any event) the § 3553(a) factors weighed against it. The district court's order is therefore

*AFFIRMED.*

19